Please tell us who you are and who you represent. Good morning. Sarah Curry from the State Appellate Defender. I represent Terrence Nicks. Good morning. Assistant State's Attorney Christine Cook on behalf of the people. All right. And Ms. Curry, how much time would you like? 15 minutes. Sure. And Ms. Cook? 15 minutes. Okay. Thank you. And I don't know what that noise is, but we'll all have to keep our voices up. And Ms. Curry, whenever you're ready. Good morning. Nobody's going to dispute that what happened at Burroughs Cemetery was horrific. But we're here today to make sure that Terrence Nicks was proven guilty beyond a reasonable doubt at a fair trial, free from error. I plan to focus my comments this morning on the issues contained in Argument 1 and the issues related to the jury instructions, but welcome questions on any of the issues raised in the briefs. A defendant has a fundamental right to be informed of the nature and cause of criminal accusations against him. Section 111-3 of the Code of Criminal Procedure is designed to inform the accused of the nature of the offense with which he's charged so that he can prepare a defense and to assure that the charged defense may serve as a bar to future prosecution. Where the sufficiency of an indictment is challenged pre-trial, as was the case here, the question is whether the indictment strictly complied with the requirements of Section 111-3. Generally, an indictment which follows the statutory language in setting out the nature and elements of the offense is deemed sufficient if the words in the statute so far particularize the offense that by their use alone, the accused is informed with reasonable certainty of the precise offense with which he is charged. Well, the state says a couple of things. First, they argue that because these are uninterred human remains, how would we know who they were? How would the grand jury know who to specify? And second, there was a bill of particulars requested and responded to that listed specific instances of disinterment. Correct. I'll start with the bill of particulars. The bill of particulars is not applicable in this case. Where a pre-trial motion to dismiss the indictment is filed, a bill of particulars can only be used to cure a sufficient indictment. Here, the defendant argued pre-trial that the indictment wasn't sufficient and was asking for the motion to be dismissed. So this court is confined to the words of the indictment, the language used in the indictment, the facts alleged in the indictment. The bill of particulars, any discovery that came afterward, is irrelevant to this argument. As to your other point, you know, this all came out in July of 2009. All of these loved ones came and found their missing headstones. Virginia Foster was disinterred in the end of July. Mr. Mix was charged at the beginning of August 2009. The state overcharged. They went to the state attorney's office. They could have had the names of the gravestones. They could have waited. They could have listed the names of the gravestones on that indictment. They could have waited and listed Virginia Foster's name on the indictment alleging removal of human remains. They didn't. The trial court would have done the State a service had they dismissed the indictment and the State could have re-indicted with a more particularized indictment alleging the facts so that Mr. Mix could prepare his defense. Instead, they overcharged with things they couldn't prove. The other two of the other charges were dismissed because they weren't even applicable and the State ended up nulling two of the charges because they couldn't prove those indictments. But here, the language of the statute is so general alleging the removal of these gravestones and human remains where you have Burroughs Cemetery with upwards of 100,000 potential burials there that Mr. Mix then has to defend against not told what gravestones, what human remains, where in the cemetery. Well, what part of the argument of the State is that there was destruction of the evidence? They had 1,500 bones. Well, how do they know whose bones? They could have conducted DNA. They conducted DNA testing on the human remains that were discovered underneath Virginia Foster. So you're saying the law would require them to do DNA on 1,500 bones in order to provide sufficient information in the indictment? Mr. Mix had the right to have specificity in the indictment so that he could defend. Does that require that the State conduct DNA? Is that what your argument is? I would argue that they needed something more specific, either DNA evidence or an exact location or even a more general location or a more confined time. Mr. Mix had to defend against five years and 1,500 bones and 100,000 grave sites with just the language of the statute. When the language of the statute is so general as this, more specificity is required. In the one published case looking at the Cemetery Protection Act, people declined. The defendant was charged, the defendants were charged with the removal of a specific gravestone, Hazel McLaren. It would have been that easy for the State to just list the names of the gravestones that they ultimately tried to prove at trial. However, they didn't. They just used the general language of the statute, leaving Mr. Mix to have to defend against 100,000 gravestones. Any more questions? I do have a huge one. I saw it in the press. Regarding that issue, defense counsel repeatedly requested that the jury be instructed on sections 1C and 14.5 of the Cemetery Protection Act. The court repeatedly denied defense counsel's request, but then ultimately allowed the jury to be instructed on a portion of 1C that actually provided little, if any, guidance to the jury on the substance of 1C. Defendants are entitled to have the jury instructed on any legally recognized defense theory, even if the proof is conflicting and there's only slight evidence upon which a given theory could be based. Section 1C provides for the removal by cemetery authority of anything placed in a cemetery in violation of cemetery rules or anything placed in a cemetery that has become wrecked, unsightly, or dilapidated. So the way you see the jury instructions, the State would have to prove a negative, that there was no lawful authority. How would they do that? How would they prove there was no lawful authority? By showing that Terrence Nix and Daly and Keith were not removing gravestones that had become dilapidated or unsightly? When they adduced evidence that when they dug and came across a tomb that was occupied, took it out, dug deeper? Certainly there was evidence of that. And this isn't a reasonable doubt argument. We're asking that the jury be instructed on these. The trial court found them to be affirmative defenses. They're not affirmative defenses. Even the jury instructions say that the only affirmative defenses here would be in Section 7 of the Criminal Code. So whether they're elements of the offense or exemptions, Mr. Nix should have had the jury instructed on these. And so only slight evidence to get, if they're exemptions, it's only slight evidence. And here, while there was conflicting evidence, there was also evidence. Terrence testified that he never removed human remains. The other cemetery workers all testified that when Daly would hit another casket or something while they were trying to dig a new grave, Terrence would stop him and they would go to the office and they would try to figure out what to do and they would try to move it and try to make it fit. Even the trial court, in allowing the albeit not very informative instruction on 1C, found that there was some evidence that the removal of the gravestones could have been with proper legal authority because there was testimony that some of them had become dilapidated or that because of the poor conditions of the cemetery, they would sink into the ground and sometimes need to be moved or whatnot. There was certainly sufficient evidence to have the jury instructed on these two sections, 1C and 14.5. Whether this Court finds that they're elements of the offense, which I would argue they are, because without legal authority, a portion that is embedded in the statute removes them from the offense. If they have legal authority, there is no crime, there is no offense. And then you would have a subsequent section describing what without legal authority is or what legal authority would be, which would be the descriptions of 1C and 14.5. But that without legal authority is embedded in the charging instrument and so therefore becomes an element of the offense like trespass. If you have legal authority, there is no offense of trespass. If they have legal authority as cemetery workers, there is no offense. However, if this Court finds that they're not elements, then they're at a minimum exemptions to which Mr. Nix presented at least slight evidence that the jury should have been instructed on these. And the instruction that was ultimately given talked about the without legal authority portion of 1C, but didn't talk about the dilapidated, the reason that you could then remove the gravestone. Yes, you could do it without legal, or if you had legal authority, but it didn't describe what that meant. So the evidence supporting that some of these gravestones may have been removed because they were dilapidated or wrecked or unsightly, that portion was not told to the jury that that would be something that would take him out of the parameters of that charge. I would just like to quickly talk about the other instruction issue, which is defense counsel also repeatedly requested that the jury be instructed on the definitions of gravestone and marker, which the Court denied. And the jury sent out a note. Defense counsel foresaw the confusion. The jury sent out a note specifically asking, are these markers with the pictures of the cylindrical markers that were used to help a family find their loved ones within the cemetery? They're numbered, set out throughout as a mapping device. They sent out 11 pictures of those. Mr. Nix was charged with removal of 10 or more gravestones. And while defense counsel initially agreed to the court telling the jury that they had received all the evidence in the law, he then thought about it and he said, yes, this was really confusing. And if you read the very, very long trial, the use of the word marker was used as gravestone, as a mapping marker, as a commemorative marker. It was used repeatedly in many different ways, and the confusion was clear. And where the evidence of whether there was 10 or more gravestones removed, this became a critical definition that the jury needed to be aware of. And the trial courts erred by not allowing the jury to be instructed on that definition. Are there no other questions? All right. Thank you, Ms. Curry. Ms. Cook. May it please the court, counsel, 1,600, 1,800 remains dug up in the cemetery and the state overcharged? That's a new argument I haven't heard before. We didn't overcharge. This was a vast, long-term conspiracy to excavate graves at Borough Cemetery for profit. So the question here isn't overcharging. The question here is whether the indictment, which was very general, it's just the statute, no specifics. It is not general. It is very specific. Well, there's not one name. You don't need that. You don't need to know. Absolutely not. Doesn't need to know one gravesite. Absolutely not. That is an issue, Justice, for a bill of particulars. No. It has nothing to do with the sufficiency of the indictment. The defendant was charged with removal of 10 or more gravestones or markers. That's a very specific act. That's a general statute, but it doesn't say, I mean, there are thousands of gravestones there, right? Yes. We don't know which 10 they're talking about. Sure do. We proved, elicited, and talked about it. No, not proved. I'm talking in the indictment. You don't have to. Do you agree that the bill of particulars is not relevant to the question of whether the indictment itself was sufficient? That's true. Okay. But it is part and parcel of the analysis in this case. No. Well, you can't have it both ways. So either we look at the bill of particulars or we don't. And I think the law is, I believe, tell me if I'm wrong, we just look at the indictment. We don't look at whatever. Right. Okay. So let's just look at the indictment. Okay. Okay. So we have very specific actions here. Removal of a gravestone or a marker. That's a very specific claim. We don't need to prove whose or we don't need to identify who the gravestones are in the indictment itself. The nature and the cause of a criminal accusation refers to the crime committed, not the manner in which it was committed. The purpose of the motion to dismiss is to protect a defendant against subsequent charges at a later time. And we know that's not an issue in this case due to compulsory jointer and speedy trial. And we know that there was sufficient information to inform the defendant of precisely what he was being accused of doing. The desecration of human remains. And that he willfully, knowingly destroyed or damaged the remains of deceased human beings. That's not general justice. That's a pretty specific act. The removal of remains of a deceased human being from a burial ground. And that he willfully and knowingly removed portions of the remains of deceased human beings. How is that general? That's a very specific statute with very specific acts. Now, the point about the Bill of Particulars, aside from the fact that this is a sufficient indictment, the Bill of Particulars becomes instrumental here because it shows that the motion to dismiss wasn't really because the defendant didn't know what he was charged with. He wanted to know the who's, the what's, the why's, the when's. Those are questions for a Bill of Particulars, not for a motion to dismiss this indictment. Even the judge was, said it was a close question on the Bill of Particulars. No, excuse me, on the indictment. No, no. The judge, I think, said it was a close case about the headstones for, I think, the motion for a directive finding or something. I believe she said, I think she said the words like, it's a closer case with the headstones. But denied the motion for a directive finding. I believe it was just on the headstones and said that was finding a fact made for the jury in this case. It should also be noted that here in this case, while the charging document originally started in September of 2003 through July 8th of 2009, the people repeatedly offered to cut years off of this indictment regarding the theft counts because those applied to Carolyn Towns who had already pled. And then once Maurice Daly also pled, the State again offered to cut this indictment in half. Repeatedly, this defendant refused that gesture and absolutely wanted the State to go to trial on the entire indictment, which we did and which we proved. But the incline, there were specifics. There were, because it was one issue. It was the removal of a, one specific headstone. That is completely distinguishable from this case where we have four people engaged in a conspiracy to excavate remains for profit, to resell graves. You cannot compare the facts and incline. But incline is instrumental. The defendant claims that incline stands for the notion that the specific person or the specific headstone has to be pled in the indictment. Incline says no such thing. The removal of gravestone shows the charging instrument must contain more specificity than merely tracking language of the statute. That was one particular offense. Here we have a series of acts. Hundreds, perhaps thousands of cadavers dug up from their graves. These defendants knew exactly what they were doing. They knew it was criminal and they tried to hide it. This indictment charged specific instances, specific crimes. The charges listed a finite number of years in one particular location, the Burr Oak Cemetery. And also provided the Burr Oak Cemetery is acres and acres and acres. It is. It absolutely is. So what? That's where he was committing these crimes. Burr Oak Cemetery. That is a specific location. He was the dump truck driver. He agreed for years to allow human remains while he spotted for Mr. Daly. And they crashed through caskets and that backhoe dug up cadavers and just threw them on the back of the defendant's truck. And the defendant many, many, many times over a period of years dumped the garbage, the human remains in the back of the cemetery on 123rd Street. They ran out of flags because they couldn't even map the number of bones back there. And as far as DNA testing, the DNA testing determined that 1,542 bones found from the back of that cemetery came from 26 different people in the dump area. So was that in the indictment? No, and it doesn't need to be. So it doesn't need to be in the indictment except for the general language of the statute? Because the general language of the statute is pretty specific. So I found what I was thinking about with regard to what the judge said. What the judge said, the trial judge expressed its sympathy for the lack of specificity in the indictment. So even the judge recognized the lack of specificity even though it denied the motion. So, again, it seems that here you are giving us all this additional information. They had the information in the response to the bill of particulars. Yet they had to go to trial on the indictment itself. It says nothing except the statute. That doesn't seem to be what is expressed when the courts have looked at indictments and said you have to have something more when it's a statute general. You have to have something more. And you have the information apparently. Okay. Hold on a second. When we have to plead more specificity than the general crime, those are the types of crimes cited in the defendants' cases. In Espinoza, the domestic battery was dismissed because they refused to name the minor victim. In Espinoza, it said the name of the victim, if known, must be in the charging document. In Swanson, disorderly conduct. But you know the headstones they were. You don't need to have specificity in the indictment, Judge. Why not? On what basis? Because it doesn't say that in the statute. It has to say in the statute that it has to. That's why you need the specificity. The statute is general. No. The statute is not general justice. It is the removal of 10 or more gravestones. That's a very specific allegation. Your question goes to a bill of particulars. Whose? Where? When? Those are bill of particular issues, not sufficiency of the indictment issues. The sufficiency of the indictment goes to things like disorderly conduct. That could be anything. Well, wait a minute. Wait a minute. Moving gravestones. Moving 10 gravestones, right? Right. 10 or more. 10 or more. I mean, the man's in the business of moving things, right? Digging, moving things, putting things back and whatever. And there's also, it's appropriate to remove things when they're cracked or need repairs and so forth. Based on that indictment, no idea what's coming. Absolutely. The removal of 10 or more gravestones without legal authority. What's that mean? What's the authority? Again. The removal of 10 or more gravestones. Okay. That's a very specific act. That's like disorderly conduct, money laundering, obstruction of justice. Those are the types of offenses that are general, that require in the indictment to identify the criminal act itself. Here, those criminal acts are most definitely defined with specificity. The removal of 10 or more gravestones without legal authority. Okay. Which gravestones really? That is for a bill of particulars. That does not need to be pled in the indictment. Based on? Well-established law. We have strict compliance with 111.3. We've named the statutory offense. We've cited the statutory provision, the date and the county, and the name of the accused. There is no requirement that the indictment be more specific than the statute. None whatsoever. That is a bill of particulars issue, not a sufficiency of the indictment issue. This did not stop the defendant in any way, shape, or form from presenting a defense, as we know, because he did present a defense in this case. And his defense was, um, I, you know, maybe dumped a few bones, or there was that double stacking. I watched that a couple of times. There was no defense to the enormity of what he was doing with Carolyn Towns and Maurice Daly and Keith Nix at that cemetery for years. He destroyed not only more than 10 headstones, but he ripped apart human cadavers and dug them out of the ground and desecrated human cadavers and their grave sites. For years, the number of bodies, the pictures that you have before this Court in evidence are gassed. That's not the issue here. I mean, as gassed as it is, and we'll all agree it's gassed, that's not the issue. The issue is whether the indictment itself is sufficient under the law. Absolutely. I mean, we can talk about how horrible the situation is, but that's not an issue. Okay. You cannot compare, is your problem just with the headstones or all three counts? It's with all three counts. Okay. Let's go through the removal of a gravestone. You're being accused of removing a gravestone illegally. That's very specific. You've got a time frame, you've got a location, and you've got the offense. The removal of a headstone or gravestone. You compare that to things that do require more specificity, like disorderly conduct. It's disorderly conduct. That could be anything. Official misconduct, like in Davis. What is that? Those need specific acts because those don't in itself show a specific act or a crime. Also, how about communicating with a juror? Well, that would need specificity because that's not necessarily illegal, and it depends on what's happening. It's not necessarily illegal to remove a gravestone because there can be a legal basis, as we know, authority to do so. Right. But in the indictment here, it was without proper legal authority. That's charged in the indictment. Which ones were without proper legal authority? Again, Justice, that is a bill of particulars issue. That does not require more specificity. Well, why in a jury situation isn't that a bill of particulars issue? I'm sorry? In a jury situation, why isn't that a bill of particulars issue? In the what situation? Juror. The juror. Oh, in your room? I thought you just said in a situation where there's a. . . Oh, the miscommunication with the juror? Yes. Or communication with the juror? Yes, communication with the juror, yes. Because, again, that could be anything. What do you mean? How you defend against what communication? Telephonic, no oral, that can just be anything. That can be for a bill of particulars? No. Because it doesn't by itself specify what the act was with any specificity. The removal of a gravestone, ten or more gravestones or headstones without legal authority is a very specific act. It's a very specific act. In Yarborough, the Court held that if the statute defines an offense and specifies conduct, as it did in this case for all three counts, no particular act is needed. In Yarborough, it found reckless driving, official misconduct, disorderly conduct, perjury, those are the types of general offenses that need specificity pled in the indictment. A removal of ten or more headstones without legal authority, I don't know how much more specific you can get with that in the indictment. It's very clear. It's about as specific as you can get. The desecration of human remains, that he destroyed or damaged the remains of deceased human beings. The removal of remains deceased from the burial ground, that he removed portions of remains of deceased human beings. I don't know how much more specific you can get. Those are bill of particular issues. Those are not sufficiency of the indictment issues. All right. Do you want to address the other arguments that Ms. Curry raised? Yes. As far as the jury instructions are, of course, the Supreme Court Rule 451 requires that the judge tender IPI instructions. And here in this case, there were IPI instructions which were intended. The judge, in fact, was very lenient and modified and provided one C language for the headstones only. Because there was some evidence that maybe headstones had been damaged or destroyed and things of that nature. So that was given to the defendant. Although, frankly, I don't think there was sufficient evidence to do so. Fred Stanback, of course, testified that on 15 occasions, he saw the defendant dumping human remains. Esper and Bridges said 10 to 20 times in 2009 alone, remains were put on the defendant's truck and he dumped them in the garbage. There was a plethora of evidence of conduct that never would have allowed either one C or the 14.5 language for the desecration or the removal of human remains. Because under no analysis or under no argument, could that be legally recognized as exemption conduct from these defendants. That they're polarizing cement liners. They're pulling human remains out of grave sites. They're dumping hundreds of people in the back near a dump area. So the judge was quite lenient in tendering an altered IPI instruction regarding the one C language. And the jury properly found the defendant was not exempt from that conduct due to the nature of the mountain of literal evidence before it and the testimony of all of the specific grave markers that were in fact missing. Certainly the definitions of gravestone and marker also non-IPI were within the abuse of discretion standard of this judge. She did not abuse her discretion in refusing the gravestone and marker. And it should initially be noted that defense counsel originally agreed with the prosecutor and the judge to tell the jury that you had the evidence continue to deliberate and it wasn't until that message had been delivered to the judge that defense counsel then said, you know, on second thought, they may be confused about the definitions of these two things. So we would like them to be, those definitions, pursuant to the dictionary to be sent back to the jury. And the judge said, if it comes up again, I'll entertain that. And it never did. These are commonly referred to things. They are not listed in the IPI and for good reason because you don't really need them. However, IPI 1184 describes gravestones or other memorial or monuments or markers commemorating a dead person. These are not definitions that needed to be provided to the jury. They're used in common day, everyday parlance. It would have only served to confuse the jury. The evidence in this case, this is an epic and historic case. And I'd also like this court to remember that the prosecution in this case spent untold amounts of time with defense attorneys, not because the indictment lacks specificity justice, but on a bill of particulars issue. In lieu of a bill of particulars issue, the prosecutor actually says on the record, I am willing to try this case informally with defense counsel, but what I don't want to do is have an exchange of paper going back and forth with the bill of particulars. The trial judge even said, do you want me to sit in on this to facilitate? Because the discovery was so voluminous, millions of documents in discovery. And the prosecutor not only now laid the thug charges against this defendant and attempt to narrow the scope of the voluminous stuff and the discovery in this case, but actually sat down with defense counsel and the lead detective in this case and handheld them through what they were going to try, who they were going to call, what they were going to ask, and even entertain the defense notions of what they would probably come up with at trial. This was an epic case of epic cooperation. This was not an insufficient indictment. The language in the indictment alleged very specific acts. More specificity, which was asked for, was given later in a bill of particulars and had nothing to do with the sufficiency of the indictment. Okay. We've heard that argument. I don't want to cut you off. That's okay. Based on all the reasons stated here today and those in our brief, the people respectfully request that this court affirm all of the defendant's convictions. Thank you. Thank you, Ms. Cook. Ms. Curry, any rebuttal? Just to respond to the State's argument that this indictment, especially the one regarding the removal of the gravestones, the indictment doesn't say removal of 10 or more gravestones. It says willfully and knowingly defaced, vandalized, injured, and removed more than 10 gravestones and memorials. I mean, this is very general. It's not 10 or more picking up and moving, as she's describing. This is a very, very vague, very, very general. Ms. Cook says it's as specific as you can get. We know it's not as specific as we can get because they have the names of the gravestones. They could have put those in the indictment. It would have been simple. Well, it may have been simple, but did they need to? Yes, because Burroughs Cemetery is 600 acres with 100,000 gravestones. So a defendant who's been engaging in this longstanding pattern of conduct at Burroughs Cemetery so that he probably couldn't even remember where and who and what he did because it was such a vast course of conduct, is entitled to have the State tell him exactly what he did? He's entitled to facts specified in the indictment that allow him to prepare a defense. That's the law. He's entitled to that. The language of the statute is very general. And let's not remember that Terrence Nix was not running the show here. He was a low-level employee. He had only been a full-time employee of the cemetery for two years. There was a lot of evidence that every time he saw something not right happen, he tried to stop it. He would get mad. He would storm off. He would refuse to dump the truck. Everybody sort of agreed to that. He was not the ringleader here. He deserved what the law requires in the indictment, which is specificity. The State had the specificity that it could have alleged. They chose not to. And because of the vastness, it's because of the vastness of this case, that he was entitled to a more narrow indictment. Is there another question? All right. Thank you both for your arguments this morning and your excellent briefs. We will take the case under advisement.